# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>APHTON CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 06-10510 (CSS) |
| WAYNE WALKER, as Trustee of<br>Aphton Corporation<br><br>Plaintiff<br><br>v.<br><br>SONAFI PASTEUR a/k/a AVENTIS, SF CAPITAL PARTNERS, HEARTLAND GROUP, INC., solely on behalf of the HEARTLAND VALUE FUND and LEGG MASON PARTNERS FUNDAMENTAL VALUE FUND, INC. f/k/a SMITH BARNEY FUNDAMENTAL VALUE FUND, INC.<br><br>Defendants. | Adv. Proceeding No:_____ |

## COMPLAINT OF WAYNE WALKER, AS TRUSTEE OF APHTON CORPORATION TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548 AND 550

Plaintiff WAYNE WALKER ("Plaintiff" or "Trustee"), as Trustee of APHTON CORPORATION, a corporation organized under the laws of the State of Delaware, by and through his counsel, Ciardi & Ciardi, P.C., brings this adversary proceeding pursuant to Rule 7001.

## JURISDICTIONAL AND VENUE

1. This Court (the "Bankruptcy Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. § 157(a), which is a civil proceeding

arising under or arising in or related to a case under title 11 of the United States Code (the "Bankruptcy Code").

2. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2).

3. Venue of this adversary proceeding is properly in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

4. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure. By this adversary proceeding, the Trustee seeks to avoid and recover, pursuant to Sections 544, 548 and 550 of the Bankruptcy Code, certain fraudulent transfers that the Aphton Corporation ("Debtor") made to Defendants.

## PARTIES AND BACKGROUND

5. Plaintiff Wayne Walker, as Trustee of Aphton Corporation (hereinafter "Aphton") has a business address of 1515 Market Street, Suite 1720, Philadelphia, Pa 19102.

6. Defendant Sonafi Pasteur a/k/a Aventis (hereinafter "Aventis") is a corporation organized under the laws of the State of Delaware with a principal place of business at 55 Corporate Drive, Bridgewater, NJ 08807.

7. Defendant Legg Mason Partners Fundamental Value Fund f/k/a Smith Barney Fundamental Value Fund, Inc. (herinafter "Smith Barney") is a corporation organized under the laws of the State of Maryland with a principal place of business at 125 Broad Street, 10th Floor, MF-2, New York, NY 10004.

8. Defendant SF Capital Partners, Ltd. (hereinafter "SF Capital") is a British Virgin Islands Company with an address of 3600 South Lake Drive, St. Francis WI 53235.

9. Heartland Group, Inc. and Heartland Value Fund, Inc. (collectively "Heartland") are Maryland corporations organized under the laws of the State of Maryland with a registered agent located at 32 South Street, Baltimore, MD 21202.

10. Aphton Corporation was in the business of, *inter alia*, biopharmaceuticals.

11. Aventis is in the business of research and pharmaceutical production.

### Aphton's Relationship with Aventis

12. In approximately February of 1997, Aphton entered into a business relationship with Connaught Laboratories Limited and its affiliated entities, collectively known as Pasteur Merieux Connaught, of whom Aventis is an affiliate and/or successor of Pasteur Merieux Connaught.

13. The relationship began with a Co-Promotion Agreement and License (hereinafter "Co-Promotion Agreement") executed February 14, 1997 regarding Aphton's developing non-toxic immunotherapy drug designed to treat certain types of pancreatic cancer which was known as Insegia. A true and correct copy of the Co-Promotion Agreement, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "A."

14. Aphton and Aventis agreed to collaborate in co-promoting, marketing, selling and distributing products being developed by Aphton to treat human cancers, including Insegia. *See* Exhibit "A."

15. Under the Co-Promotion Agreement, Aphton granted Aventis a non-exclusive license to manufacture their products and have their products manufactured for it, while reserving its right to promote, market, distribute and sell its product on its own or in conjunction with Aventis. *See* Exhibit "A."

16. In addition to the Co-Promotion Agreement, Aphton and Aventis entered into two related supply agreements dated August 1, 1998 (hereinafter collectively, the "Supply Agreements"), which required (1) Aventis to supply Aphton with certain biological materials necessary for Aphton's development of its products at arm's length terms; and (2) Aphton to supply Aventis with its product at arm's length terms. True and correct copies of the Supply Agreements, the terms of which are incorporated herein by reference, are attached hereto as Exhibit "B."

17. In December 2002, Aphton and Aventis restructured the Co-Promotion Agreement (hereinafter the "Restructured Agreement"). A true and correct copy of the Restructured Agreement, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "C."

18. The Restructured Agreement was broader than the original Co-Promotion Agreement in that it would prohibit Aphton from granting a license to any party other then Aventis related to "clinical development, promotion, marketing, distribution or sales rights with respect to any product related to gastrin or its receptors." *See* Exhibit "C."

19. In connection with the Restructured Agreement, Aphton and Aventis entered into a Debenture Purchase Agreement dated December 19, 2002 (hereinafter the "Debenture Agreement"). A true and correct copy of the Debenture Agreement, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "D."

20. Pursuant to the Debenture Agreement, Aphton agreed to sell, and Aventis agreed to purchase, a convertible debenture in the principle amount of $3 million due on December 19, 2007 (hereinafter the "Debenture"). *See* Exhibit "D."

21. Under the terms of the Debenture, Aphton was responsible for making annual interest payments to Aventis. *See* Exhibit "D."

22. Aventis retained the right to convert any or all of the Debenture into common stock of Aphton. *See* Exhibit "D."

23. In approximately February of 2005, Aphton announced that Insegia had failed to meet the clinical benchmarks necessary to be approved by the FDA.

24. By letter dated April 27, 2005, Aventis demanded that the entire $3 million principle balance of the Debenture and accrued interest be redeemed in cash. A true and correct copy of the Defendant's letter dated April 27, 2005, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "E."

25. In exchange for the return of its rights to market the non-FDA approved Insegia and the forgiveness of $1.8 million receivable due to Aventis, Aphton repaid the full $3 million demanded under the Debenture (the "Transfer"); as well as, giving up the right to continue to receive the biological agents necessary to continue its work with Insegia.

### Aphton's Relationship with the Noteholders

26. Pursuant to a Securities Purchase Agreement dated March 31, 2003 (the "Securities Purchase Agreement") (attached hereto as Exhibit "F" and incorporated herein by reference), Aphton issued a number of notes (collectively "the Notes") to Heartland, Smith Barney, and SF Capital (collectively the "Note Holders").

27. Pursuant to the Securities Purchase Agreement, the Noteholders paid Aphton $15 million in exchange for the Notes, which bore an equivalent aggregate face value.

28. The Notes provided that the Noteholders were entitled to convert any portion of the outstanding principal balance of the Notes, plus any accrued interest, into shares of Aphton stock.

29. At any time after March 31, 2006, the Noteholders had the option to redeem any portion of the Notes for cash on a dollar for dollar basis. Upon the occurrence of an event of default, the Noteholders were entitled to redeem any portion of the Notes for cash equal to 110% if the Notes being redeemed.

30. Upon learning of Aphton's $3 million payment to Aventis related to the Debenture, the Noteholders asserted that such payment constituted a default and demanded that Aphton redeem the Notes.

31. After continued pressure from the Noteholders, an Exchange Agreement ("Exchange Agreement") was reached with the Noteholders in which the Noteholders agreed to surrender the Notes for a total payment of $3 million, and the issuance of 10,000 shares of preferred stock and 2 million shares of common stock. A true and correct copy of the Exchange Agreement, dated November 23, 2005, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "G."

## The Bankruptcy Case

32. On or about May 23, 2006, Aphton filed a voluntary Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Delaware.

33. On or about March 29, 2007, this Honorable Court entered *Findings of Fact, Conclusions of Law and Order Confirming First Amended Liquidating Plan Proposed by Aphton Corporation and Official Committee of Unsecured Creditors* [Docket No. 234 in Case No. 06-10510].

34. According to Section 6.4 of the *First Amended Joint Liquidating Plan Proposed by Aphton Corporation and the Official Committee of Unsecured Creditors* [the "First Amended Plan] states *inter alia* "[t]he Plan administrator, pursuant to the Plan Administrator Agreement, shall have the sole right to pursue, and shall have standing with respect to, any existing or potential Avoidance Actions and Litigation Claims, except those previously waived or released by the Debtor pursuant to any Final Order of the Bankruptcy Court."

## COUNT I

### (Aphton v. Aventis)

### (Trustee as Lien Creditor pursuant to 11 U.S.C. § 544)

35. The Plaintiff repeats and re-alleges the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein.

36. Pursuant to Section 544(b) of the Bankruptcy Code, the Plaintiff, in his capacity as Trustee, may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

37. Under either the Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act, Plaintiff can avoid the Transfer(s) that comprise the $3 million in funds that were transferred to Defendant Sanofi.

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against Aventis on this Count and respectfully requests the Court to demand Aventis return $3.0 million dollars, plus interest through the date of judgment, minus the reasonable

value of the right to market Insegia and grant whatever other relief this Honorable Court deems appropriate and just.

## COUNT II

### (Aphton v. Aventis)

### (Fraudulent Conveyance Pursuant to 11 U.S.C. §548)

38. Pursuant to §548 of the Bankruptcy Code, the trustee may avoid any transfers of an interest of the debtor in property that was made within two years of the petition date if the debtor (i) received less than reasonable equivalent value for the transfer, and (ii) was insolvent on the date that the transfer was made. 11 U.S.C. §548(a).

39. The transfer of $3 million dollars from Aphton to Aventis; as well as the transfer of the property rights, were made pursuant to the attached Termination Agreement dated November 2, 2005, less than seven months before the petition date. A true and correct copy of the Termination Agreement, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "H."

40. The attached Form 10-K filed by Aphton with the Securities Exchange Commission for the fiscal year ending December 31, 2005 shows that Aphton was insolvent as of the date of the Termination Agreement. A true and correct copy of the Form 10-K for the year ending December 31, 2005, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "I."

41. Aphton lost the rights to continue to receive the biological agents; as well as, transferred $3 million in cash pursuant to the Termination Agreement. Aphton also agreed to pay a 4% royalty on all future sales of Insegia to Aventis. *See* Exhibit "H."

42. Aventis returned the marketing rights to Insegia and forgave $1.8 million dollars in debt owed by Aphton pursuant to the Termination Agreement. *See* Exhibit "H."

43. The Debtor received less than a reasonably equivalent value in exchange for the transfer and/or obligation.

44. Aphton was insolvent at the time of the transfer.

45. The Termination Agreement was executed seven (7) months prior to Aphton's petition for bankruptcy. *See* Exhibit "H."

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against Aventis on this Count and respectfully requests the Court to demand Aventis return $3.0 million dollars, plus interest through the date of judgment, minus the reasonable value of the right to market Insegia and grant whatever other relief this Honorable Court deems appropriate and just.

## COUNT III

### (Aphton v. Aventis)

### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)

46. The Plaintiff repeats and re-alleges the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein.

47. Pursuant to Section 548(a) of the Bankruptcy Code, the Plaintiff may avoid the Transfers and, pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff may recover for the benefit of the estate of the Debtor the Transfers, or the value of the Transfers from Defendant.

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against Aventis on this Count and respectfully requests the Court to demand

Aventis return $3.0 million dollars, plus interest through the date of judgment, minus the reasonable value of the right to market Insegia and grant whatever other relief this Honorable Court deems appropriate and just.

## COUNT IV

### (Aphton v. Aventis)

### (Tortious Interference with Contract)

48. The Plaintiff repeats and re-alleges the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein.

49. In addition to terminating the co-promotion agreement and license, the Termination Agreement, attached hereto to as Exhibit "H", also stated that the PMC Supply Agreement entered into as of August 1, 1998 between sanofi pastueur and Aphton for the supply of Diphtheria Toxoid and Tetanus Toxoid was immediately terminated. *See* Exhibit "H".

50. Diphtheria Toxoid ("DT") is an essential component and agent to the production and development of Insegia.

51. At or about the time of the Termination Agreement, Aphton was conducting clinical trials of Insegia for eventual approval by the Food and Drug Administration ("FDA").

52. Although the termination agreement provided for the supply of DT for the years 2006 through 2009, Aventis provided notice that they would not comply under the terms of the Termination Agreement for the future supply of DT as provided therein.

53. Additionally, although there were other suppliers of DT, FDA regulations would require Aphton to repeat the previously conducted clinical trials because Aphton would have changed their supplier of DT.

54. According to the term sheet received from Receptor BioLogix, Inc. ("Receptor") dated May 30, 2006 (attached hereto and as Exhibit "J" and incorporated herein by reference), Receptor offered to purchase "all assets related to the Insegia product" for $2,000,000.00.

55. Upon information and belief, Receptor learned of the Termination Agreement, as well as Aventis' reluctance to continue to provide the DT as expressed in the Termination Agreement, while conducting additional due diligence in anticipation of the acquisition of all the assets related to Insegia.

56. In response to the concerns regarding the repetition of clinical trials (based on the insufficient amounts of DT to be provided) the Insegia product-related assets eventually were acquired by Receptor for $750,000.00. *See Order (A) Approving the Sale of Certain Assets of the Debtor Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363, (B) Authorizing the Assumption and Assignment of Certain Unexpired Leases and Executory Contracts, (C) Authorizing the Rejection of Certain Unexpired Leases and Executory Contracts and (D) Granting Related Relief.* [Docket No. 110 in Main Case No. 06-10510-CSS].

57. Based on Aventis' wrongful termination of the Supply Agreements for DT, Aventis wrongfully and intentionally diminished the value of the Insegia product related assets which resulted in an economic loss of $1,250,000.00 that could have been realized by Aphton in the sale of the Insegia assets.

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against Aventis on this Count and respectfully requests the Court to award Aphton $1,250,000.00 for lost profits related to the sale of INSEGIA product related assets to Receptor BioLogix, Inc. and grant whatever other relief this Honorable Court deems appropriate and just.

## COUNT V

### (Aphton v. Noteholders)

### (Trustee as Lien Creditor pursuant to 11 U.S.C. § 544)

58. The Plaintiff repeats and re-alleges the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein.

59. Pursuant to Section 544(b) of the Bankruptcy Code, the Plaintiff, in his capacity as Trustee, may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

60. Under either the Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act, Plaintiff can avoid the Transfer(s) that comprise the $3 million in funds that were transferred to the Defendant Noteholders.

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against the Noteholders on this Count and respectfully requests the Court to demand the Noteholders return $3.0 million dollars, plus interest through the date of judgment, plus the market value of the transferred stock at the time of the transfer and grant whatever other relief this Honorable Court deems appropriate and just.

## COUNT VI

### (Aphton v. Noteholders)

### (Fraudulent Conveyance Pursuant to 11 U.S.C. §548)

61. Pursuant to §548 of the Bankruptcy Code, the trustee may avoid any transfer of an interest of the debtor in property that was made within two years of the petition date if the debtor

(i) received less than reasonable equivalent value for the transfer, and (ii) was insolvent on the date that the transfer was made. 11 U.S.C. §548(a).

62. The transfer of $3 million dollars from Aphton to the Noteholders; as well as the issuance of 10,000 shares of preferred stock and 2 million shares of common stock, were made pursuant to the attached Exchange Agreement dated November 23, 2005, less than seven months before the petition date. *See* Exhibit "G."

63. The attached Form 10-K filed by Aphton with the Securities Exchange Commission for the fiscal year ending December 31, 2005 shows that Aphton was insolvent as of the date of the Exchange Agreement. A true and correct copy of the Form 10-K for the year ending December 31, 2005, the terms of which are incorporated herein by reference, is attached hereto as Exhibit "I."

64. Aphton lost 10,000 shares of preferred stock and 2 million shares of common stock; as well as the transfer of $3 million in cash pursuant to the Exchange Agreement Agreement.

65. The Debtor received less than a reasonably equivalent value in exchange for the transfer and/or obligation.

66. Aphton was insolvent at the time of the transfer.

67. The Exchange Agreement was executed seven (7) months prior to Aphton's petition for bankruptcy. *See* Exhibit "G."

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against the Noteholders on this Count and respectfully requests the Court to demand the Noteholders return $3.0 million dollars, plus interest through the date of judgment, plus the

market value of the transferred stock at the time of the transfer and grant whatever additional relief this Honorable Court deems just and appropriate.

## COUNT VII

### (Aphton v. Noteholders)

### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)

68. The Plaintiff repeats and re-alleges the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein.

69. Pursuant to Section 548(a) of the Bankruptcy Code, the Plaintiff may avoid the Transfers and, pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff may recover for the benefit of the estate of the Debtor the Transfers, or the value of the Transfers from the Defendant Noteholders.

**WHEREFORE**, Plaintiff Wayne Walker, as Trustee of Aphton Corporation demands judgment against the Noteholders on this Count and respectfully requests the Court to demand the Noteholders return $3.0 million dollars, plus interest through the date of judgment, plus the market value of the transferred stock at the time of the transfer and grant whatever additional relief as this Honorable Court deems just and appropriate.

**CIARDI & CIARDI, P.C.**

/s/ Shannon D. Leight
Shannon D. Leight (DE 4115)
Albert A. Ciardi, III,
Joseph V. Bongiorno
901 Market Street, Suite 700
Wilmington, DE 19801
302.472.9039 telephone
302.397.2828 facsimile
*Attorneys for Plaintiff,*
*Wayne Walker as Trustee for*
*Aphton Corporation*

Dated: May 9, 2008